# TAYLOR & COHEN LLP

40 Worth Street, 10th Floor
New York, NY 10013
Tel (646) 527-7377
Fax (646) 439-9983
www.taylorcohenllp.com

August 19, 2020

*By ECF and Email*

The Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re: *United States v. Quandel Smothers*, 20 CR 213 (KAM) – Application for Pretrial Release**

Your Honor:

    I represent Quandel Smothers in the above-referenced case under the Criminal Justice Act. I respectfully submit this letter in support of Mr. Smothers' application for pre-trial release on a $150,000 bond secured by his family's home, co-signed by five sureties and subject to conditions including home incarceration and GPS monitoring. As set forth more fully below, Mr. Smothers should be released subject to the proposed bail conditions because they will reasonably assure both his appearance in court and the safety of the community. Additionally, Mr. Smothers should be released on bail because he suffers from underlying medical conditions, including asthma and the loss of his spleen and a kidney, which increase his risk of serious illness from COVID-19 in an incarceratory setting. Finally, Mr. Smothers has been denied regular contact with undersigned counsel because of conditions within the MDC that go beyond the precautions against the spread of COVID-19.

    Mr. Smothers is charged in two counts of the indictment in this case: (1) Count One, which charges Mr. Smothers and others with racketeering conspiracy; and (2) Count Two, which charges Mr. Smothers with possession of a firearm during a drug trafficking crime. (*See* ECF Doc. No. 1). Notably, Mr. Smothers has **NOT** been charged in connection with any of the violent offenses alleged in Counts Three through Twenty of the indictment. On June 24, 2020, Mr. Smothers was arraigned before Chief Magistrate Cheryl L. Pollak and did not make a bail application at that time. Judge Pollak granted Mr. Smothers leave to present a bail package on a future date. (*See* ECF Doc. No. 14).

    Mr. Smothers now respectfully proposes the following bail package and conditions:

1. a $150,000 bond secured by his mother's home owned in Brooklyn, New York;

2. five financially responsible co-signers who are family members and longtime friends of Mr. Smothers;

3. home incarceration enforced by GPS monitoring;

4. no contact with co-defendants except through counsel;

Hon. Kiyo A. Matsumoto
August 19, 2020
Page 2

    5. supervision by Pretrial Services, including home inspections; and

    6. drug testing and, if necessary, treatment.

These conditions provide reasonable assurance of Mr. Smothers' appearance and the safety of the community.

    Although this is a presumption case because of the gun possession charge, the ultimate burden of proof of risk of flight and danger to the community remains with the government. *See United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1986). Here, the 18 U.S.C. § 3142(g) factors favor Mr. Smothers' release subject to the bail package proposed above. While the charges against Mr. Smothers are serious, the government's case presents glaring inconsistencies. For example, the government contends that Mr. Smothers is the highest-ranking member of an alleged street gang called Elite Assassin Millas. (*See* ECF Doc. 83-1 at 2). Yet the government lacked probable cause to indict Mr. Smothers in connection with any of the violent crimes that other alleged members of "E.A.M." are accused of having committed since 2015, including the alleged conspiracies to commit murder charged in Counts Nine and Seventeen.

    Nor has the government produced an iota of evidence that Mr. Smothers had any involvement in the offenses alleged in the indictment or even that he was involved in a conspiracy with any of his co-defendants. Even though the government has produced numerous surveillance videos and lab reports in the general discovery in this case, none of that evidence concerns Mr. Smothers. Nor does Mr. Smothers' individual discovery contain a shred of proof of his involvement in the alleged racketeering conspiracy or any of the substantive or conspiracy offenses that are alleged against his co-defendants. There are no wiretapped conversations, no text messages, no social media posts, no PEN register data, no surveillance videos, no photos, no police reports, no co-conspirator statements, no evidence of any kind to support the government's case. The government has merely proffered, without substantiation, that Mr. Smothers shot another alleged member of "E.A.M." in 2011 but ultimately "pled the charge down to Attempted Criminal Possession of a Weapon in the Second Degree." (ECF Doc. No. 83-1 at 2). Although the government has indicated that it intends to retry that 2011 case, the discovery does not contain any evidence that Mr. Smothers' 2011 arrest was connected to the offenses alleged in this indictment. In sum, the weight of the evidence against Mr. Smothers does not favor his continued detention.

    While Mr. Smothers has a criminal history including convictions for attempted possession of a firearm, his rap sheet does not tell the whole story of his life. Mr. Smothers has the strong support of his family and friends, as demonstrated by his family's willingness to use their home as collateral for his bond. Mr. Smothers has also suffered great hardship in recent years as the result of a police shooting in 2014, for which he sued the City of New York and the officers who shot him without justification and falsely claimed he had fired a weapon at them. (*See* Exhibit 1). The injuries Mr. Smothers sustained were severe. He spent months in intensive care, and doctors removed his spleen and a kidney. Since then, Mr. Smothers has focused on caring for his mother, who resides in a rehabilitation center in Brooklyn, and his four children, who range in age from 4 months to 10 years old.

Hon. Kiyo A. Matsumoto
August 19, 2020
Page 3

Finally, because of the injuries he suffered from the police shooting as well as his history of asthma, Mr. Smothers faces an increased risk of serious illness from COVID-19. The lack of social distancing and poor hygiene in prisons and jails encourages the spread of COVID-19, and the severe outbreaks and loss of life within BOP facilities are well documented. There have been 41 confirmed COVID-19 cases among MDC inmates since the beginning of the pandemic, and there are currently three active cases among the facility's staff.[1] Throughout the BOP system, there have been 114 federal inmate deaths from COVID-19 to date. *See id.* While the number of deaths is seemingly small, the death rate for federal prisoners as a percentage of the inmate population is **more than 50% higher** than the death rate in the United States generally.[2] Thus, notwithstanding the measures taken by the BOP to reduce the spread of the diseases within its facilities, federal jails and prisons demonstrably increase the risk of serious illness from COVID-19 – especially for people, like Mr. Smothers, with serious underlying medical issues. Given the consensus that a resurgence of cases in New York is likely in the months ahead, bail should be granted to protect Mr. Smothers from contracting the disease in the MDC. *See United States v. Prince*, 19-CR-452 (PKC) (EDNY) (granting bail subject to conditions, over government objection, to defendant with asthma charged with felon in possession); *United States v. Jackson*, 19-CR-356 (ARR) (EDNY) (releasing, over government objection, defendant with asthma in felon-in-possession case in which defendant had previously violated bail conditions).

Finally, I have been unable to communicate with Mr. Smothers regularly because of the conditions of his detention in the MDC, which have obstructed his access to counsel. As the Court may recall, Mr. Smothers indicated at the August 3, 2020 conference that he had not had an opportunity to speak to me about certain issues, including his consent to proceed remotely by telephone. Although Mr. Smothers and I had spoken by telephone twice in the preceding week – on July 27 and July 31 – those calls were limited in duration because of the high demand for attorney-client telephone calls. Since the outbreak of the pandemic, it has been possible to speak to clients in the MDC only for short periods of time, and calls that are scheduled days in advance are sometimes cancelled without notice. Since the August 3 conference, the difficulty of communicating with Mr. Smothers (and other inmates housed on the fifth and sixth floors of the MDC) has increased. Immediately after the August 3 conference, I requested a one-hour call with Mr. Smothers, which was scheduled for August 6. That call never occurred, however, because of a safety issue in the MDC not related to COVID-19. (Indeed, all my scheduled calls with MDC inmates on August 6 were cancelled without explanation.) I attempted to reschedule the call with Mr. Smothers on the following day, but we were not provided a one-hour time slot until August 17 – two weeks after my original request for an attorney-client call. When I finally was able to speak with Mr. Smothers, I learned that he and the other inmates in his unit had been confined to their cells 24 hours a day for approximately 12 of the 14 days since the August 3 conference. During that

---

[1] *See COVID-19 Cases*, Federal Bureau of Prisons, at https://www.bop.gov/coronavirus/ (updated Aug. 19, 2020).

[2] The pre-pandemic federal inmate population was approximately 140,000. 114 COVID-19 deaths out of a population of 140,000 is equivalent to 81.4 deaths per 100,000 people. By contrast, the national death rate is 52.52 per 100,000 population, according to Johns Hopkins University. *See Mortality Analysis*, Johns Hopkins University of Medicine, at https://coronavirus.jhu.edu/data/mortality (last visited Aug. 19, 2020).

Hon. Kiyo A. Matsumoto
August 19, 2020
Page 4

time, Mr. Smothers has been unable to access computers to review discovery or to send messages to me or his family or to use the phones. The inmates in Mr. Smothers' unit are allowed out of their cells only to take showers three days a week. Otherwise, they are continually locked up. Under these conditions of detention, Mr. Smothers is being denied access to counsel and even the opportunity to review the discovery.

    For the foregoing reasons, Mr. Smothers respectfully requests that the Court grant bail subject to the conditions set forth above.

Respectfully submitted,

/s/ _____
Zachary S. Taylor

cc:    Margaret Gandy, Esq.
       Jonathan Siegel, Esq.
           Assistant United States Attorneys (*by ECF and email*)