UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\- x

UNITED STATES OF AMERICA, :
:
               Plaintiff, :
:
                                                 :   20 CR 213 (KAM)
    -against- :
:
QUANDEL SMOTHERS, *et al.* :
:
             Defendants. :

\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\- x

**MEMORANDUM OF LAW IN SUPPORT OF
QUANDEL SMOTHERS' OMNIBUS PRETRIAL MOTIONS**

June 18, 2021

TAYLOR & COHEN LLP
Zachary S. Taylor (ZT-7545)
305 Broadway, 7th Floor
New York, New York 10007
Tel: (212) 257-1902
Fax: (646) 808-0966
Email: ztaylor@taylorcohenllp.com

# Table of Contents

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ............................................................................................................................ 2

    I. The Indictment .................................................................................................................. 2

    II. The Government's Investigation of E.A.M. and the Seizure of Mr. Smothers' Cellphone 3

    III. The Parties' Meet and Confer Regarding a Bill of Particulars .......................................... 4

ARGUMENT .................................................................................................................................. 6

    I. The Government's Unreasonable Delay in Obtaining a Search Warrant for Mr. Smothers' Cellphone Violated the Fourth Amendment ................................................................................ 6

    II. The Court Should Sever Mr. Smothers' Trial from His Co-Defendants' To Prevent Spillover Prejudice .......................................................................................................................... 9

    III. A Bill of Particulars is Required to Enable Mr. Smothers to Adequately Prepare a Defense for Trial and to Avoid Double Jeopardy ...................................................................... 11

    IV. Mr. Smothers Joins in Qawon Allen's Motion to Dismiss the Indictment ....................... 13

CONCLUSION ............................................................................................................................ 13

## Table of Authorities

**Cases**

*Riley v. California*,
  573 U.S. 373 (2014) .................................................................................................. 7, 8

*United States v. Barnes*,
  158 F.3d 662 (2d Cir. 1998) ........................................................................................ 11

*United States v. Bortnovsky*,
  820 F.2d 572 (2d Cir.1987) ......................................................................................... 11

*United States v. Davidoff*,
  845 F.2d 1151 (2d Cir. 1988) ................................................................................ 11, 12

*United States v. Martin*,
  157 F.3d 46 (2d Cir. 1998) ............................................................................................ 7

*United States v. Mitchell*,
  565 F.3d 1347 (11th Cir. 2009) ..................................................................................... 7

*United States v. Pratt*,
  915 F.3d 266 (4th Cir. 2019) ......................................................................................... 7

*United States v. Skelos*,
  No. 15 CR 317 (KMW), 2015 WL 6159326 (S.D.N.Y. Oct. 20, 2015) ..................... 12

*United States v. Smith*,
  967 F.3d 198 (2d Cir. 2020) .............................................................................. 6, 7, 8, 9

*United States v. Spinelli*,
  352 F.3d 48 (2d Cir. 2003) .......................................................................................... 10

*Zafiro v. United States*,
  506 U.S. 534 (1993) .................................................................................................... 10

**Rules**

Federal Rule of Criminal Procedure 14(a) ........................................................................ 10

Quandel Smothers, by his attorneys, respectfully submits this memorandum of law in support of his omnibus pretrial motions.

## PRELIMINARY STATEMENT

After seizing Mr. Smothers' cellphone on the day of his arrest, the government waited until October 2, 2020—101 days later—to seek a search warrant. The government's delay is unreasonable. No further investigation was required to obtain a warrant. The government already knew most of the allegations recited in the agent's affidavit at the time the cellphone was seized; the government was aware of the remainder of the allegations no later than August 2020—at least five weeks before the warrant application. This unreasonable delay constitutes a clear violation of the Fourth Amendment and warrants the suppression of any evidence obtained from the cellphone.

Mr. Smothers is also entitled to a separate trial from his co-defendants. Mr. Smothers is charged in only two of the 20 counts in the Indictment. Unlike his co-defendants, Mr. Smothers is not charged with committing or conspiring to commit the murder or attempted murders alleged in the Indictment. A joint trial of Mr. Smothers and his co-defendants would involve evidence of deadly violence that has nothing to do with Mr. Smothers, aside from his alleged association with his co-defendants through A.I.M. Such evidence would create unavoidable spillover prejudice by preventing the jury from fairly assessing Mr. Smothers' innocence or guilt of the charges against him.

Finally, Mr. Smothers is entitled to a bill of particulars. The government alleges that Mr. Smothers conspired to participate in a racketeering enterprise during a 14-year period. According to the Indictment, the conduct of the affairs of the alleged enterprise consisted of "multiple acts" of drug trafficking, murder, identification document fraud and bank card fraud over the course of 14 years. However, aside from a recitation of the statutory provisions relating to each offense,

the Indictment contains zero information about these illegal acts, such as when and where they are alleged to have occurred. Consequently, a bill of particulars is required so that Mr. Smothers can adequately prepare for trial and avoid double jeopardy with respect to those allegations.

## BACKGROUND

### I. The Indictment

Mr. Smothers is charged in two counts of the 20-count Indictment. Count One charges Mr. Smothers and four of his co-defendants—Tyshawn Corbett, Qawon Allen, Devon Bristol and Marlon Bristol—with racketeering conspiracy from approximately 2006 to 2019. (*See* Declaration of Zachary S. Taylor ("Taylor Decl."), Ex. A). The Indictment alleges that members of an enterprise called "Elite Assassin Millas," or "E.A.M," engaged in drug trafficking and firearms trafficking and committed acts of violence, including murder and assault, as well as other crimes. (*See id.* ¶ 1). Mr. Smothers and his co-defendants are charged with conspiring to participate over a 14-year period in the affairs of E.A.M. through a pattern of racketeering activity. (*See id.* ¶ 10). The alleged pattern consisted of "multiple acts" of fraud in connection with identification documents, in violation of 18 U.S.C. § 1028; "multiple acts" of fraud in connection with access devices, in violation of 18 U.S.C. § 1029; "multiple acts involving murder"; and "multiple offenses involving dealing in controlled substances." (*See id.* ¶ 11).

Count Two charges Mr. Smothers and the same four co-defendants with use of one or more firearms between 2006 and 2019 in furtherance of the drug trafficking crime charged in Count One. (*See id.* ¶ 13).

Counts Three through Five charge Tyshawn Corbett with murder in aid of racketeering and firearms offenses in connection with the alleged murder of Michael Tenorio on or about April 21, 2015. Counts Six through Eight charge Mr. Corbett with attempted murder in aid of racketeering, assault in aid of racketeering and firearms possession in connection with an alleged

2

attack on John Doe #1 on or about March 7, 2016. Counts Nine and Ten charge Mr. Corbett and Devon and Marlon Bristol with conspiracy to commit murder in aid of racketeering and interstate stalking between February and June 2018, also in connection with John Doe #1. Counts Eleven and Twelve charge Mr. Corbett with attempted murder in aid of racketeering and firearms possession in connection with an alleged attack on John Doe #2 on or about June 10, 2018. Counts Thirteen through Fifteen charge Mr. Corbett with attempted murder in aid of racketeering, assault in aid of racketeering and firearms possession in connection with another alleged attack on John Doe #1 on or about June 28, 2018. Count Sixteen charges Desmonn Beckett as an accessory after the fact in connection with the alleged attack on John Doe #1 on or about June 28, 2018. Count Seventeen charges Qawon Allen and Andrew Campbell with conspiracy to commit murder in aid of racketeering between July 21 and July 28, 2018, and Counts Eighteen through Twenty charge Mr. Allen with attempted murder in aid of racketeering, assault in aid of racketeering and firearms possession in connection with an alleged attack on John Doe #2 on or about July 28, 2018.

## II.    The Government's Investigation of E.A.M. and the Seizure of Mr. Smothers' Cellphone

The FBI and NYPD have been investigating E.A.M. since 2018. (*See* Taylor Decl., Ex. B ¶ 7). On March 9, 2020, two weeks before Mr. Smother's arrest in this case, the government applied for a search warrant in connection with a Samsung smartphone that had allegedly been seized from Mr. Smothers incident to an unrelated arrest on July 25, 2019 (the "March 2020 Warrant"). (*See id.* Exs. B, C). The agent affidavit supporting the March 2020 Warrant alleged Mr. Smothers' involvement as a leader in E.A.M. based on information from a confidential source, who claimed to be a member of E.A.M. (*See id.*, Ex. B ¶¶ 13-15). The affidavit further alleges that Mr. Smothers committed an act of violence on behalf of E.A.M. on April 30, 2011.

(*See id.*, Ex. B ¶¶ 18-21). The affidavit goes on to allege, based on information provided by the confidential source, that Mr. Smothers was a marijuana dealer. (*See id.*, Ex. B ¶¶ 22). The government's application for the March 2020 Warrant was granted. (*See id.* Ex. C).

On June 23, 2020, federal agents arrested Mr. Smothers in this case. The agents seized his current cellphone, an iPhone, incident to his arrest. (*See* Declaration of Quandel Smothers ¶ 2). Like many people, Mr. Smothers keeps a significant amount of personal information on his cellphone and wants it returned to him. (*See id.* ¶ 3).

Despite having possession of the iPhone since June 23, 2020, the government waited until October 2, 2020 to apply for a search warrant. (*See* Taylor Decl., Ex. D at 34). In the agent's affidavit supporting the warrant application, the government claimed that the length of the warrantless seizure—over 100 days—was reasonable because "the investigation of this case continued after the seizure of the [cellphone]." (Taylor Decl., Ex. D at 4 n.2). The agent's affidavit offers two examples of such newly acquired information. (*See id.*). However, neither example directly concerns Mr. Smothers. The affidavit also recites evidence obtained from the Samsung cellphone that was subject to the March 2020 Warrant. (*See id.* ¶ 18). That information was available to the government no later than August 2020, as it was included in the government's August 24, 2020 opposition to Mr. Smother's bail motion. (*See* ECF Doc. No. 88 at 2-3).

The government produced a partial extraction of Mr. Smothers' iPhone on June 8, 2021, nearly a year after the device was seized.

**III.    The Parties' Meet and Confer Regarding a Bill of Particulars**

On September 21, 2020, defense counsel served the government with a request for a bill of particulars. (*See* Taylor Decl., Ex. E). Specifically, the defense requested the following categories of information:

4

1. The date, time and location of the instances of drug trafficking in which members of E.A.M. are alleged to have engaged;

2. The date, time and location of the instances of firearms trafficking in which members of E.A.M. are alleged to have engaged;

3. The identity of "rival of E.A.M." refereed in Paragraph 3 of the Indictment;

4. The identity of the "others" who are members of the alleged conspiracy charged in Count One;

5. The date, time and location of the instances of the "multiple acts" involving fraud in connection with identification documents alleged in Count One;

6. The date, time and location of the instances of the "multiple acts" involving fraud in connection with access devices alleged in Count One;

7. The date, time and location of the instances of the "multiple acts" involving murder alleged in Count One;

8. The date, time and location of the instances of the "multiple offenses involving dealing in controlled substances" alleged in Count One; and

9. The date, time and location of Mr. Smothers' alleged possession of one or more firearms alleged in Count Two.

In a subsequent meet-and-confer, which took place by telephone on September 29, 2020, the government responded that it would likely take the position that a bill of particulars was not warranted. (*See* Taylor Decl. ¶ 5). During the meet-and-confer, the government represented that there was evidence that Mr. Smothers was engaged in dealing drugs in the discovery. The government further advised that there would be no discovery relating to Count Two aside from

5

evidence relating to Mr. Smothers' prior convictions for attempted gun possession, which relate to arrests in 2011 and 2014. To date, the government has not served a bill of particulars.

## ARGUMENT

### I. The Government's Unreasonable Delay in Obtaining a Search Warrant for Mr. Smothers' Cellphone Violated the Fourth Amendment

Any data that the government obtains from Mr. Smothers' iPhone should be suppressed under the Fourth Amendment because the government acted unreasonably by delaying for 101 days before applying for a search warrant. Between the seizure of the cellphone on March 23, 2020 and the government's application for a search warrant on October 2, 2020, the parties appeared before this Court three times for status conferences, on July 6, August 3 and September 30, 2020. At the last of those conferences, the government represented that production of Rule 16 discovery would be completed within two to three weeks, even though the government had still not even applied for a warrant to search Mr. Smothers' cellphone. In the absence of any justification for the government's 101-day delay, the magistrate judge should not have issued the warrant.

The Second Circuit has held that a 31-day delay between the police's seizure of a tablet computer and their application for a search warrant was unreasonable and violated the Fourth Amendment. *See United States v. Smith*, 967 F.3d 198, 211 (2d Cir. 2020). The Second Circuit identified four factors that are generally relevant to whether the amount of time of a warrantless seizure of property is unreasonable: "[1] the length of the delay, [2] the importance of the seized property to the defendant, [3] whether the defendant had a reduced property interest in the seized item, and [4] the strength of the state's justification for the delay." *Id.* at 206. Under the *Smith* factors, the government's 101-day warrantless seizure of Mr. Smothers' iPhone was unreasonable and violated the Fourth Amendment.

6

In its warrant application, the government attempts to distinguish *Smith* on the grounds that Mr. Smothers' cellphone was seized incident to his arrest, as opposed to based on probable cause. (*See* Taylor Decl., Ex. D at 4 n.2). According to the government, *Smith* does not apply here because "seizures of items found on an arrestee's person are justified by the fact of arrest and are categorically reasonable under the Fourth Amendment." (*Id.*). This astonishing claim is incorrect. As the Supreme Court made clear in *Riley v. California*, the "answer to the question of what police must do before searching a cell phone seized incident to an arrest is … simple—get a warrant." 573 U.S. 373, 403 (2014). Indeed, *Smith* cites this very rule. *See* 967 F.3d at 208. Thus, it is crystal clear that *Smith* applies to the seizure of Mr. Smothers' cellphone.

Under the *Smith* factors, the government's delay was unreasonable. As to the first factor, the length of the delay was egregious—more than three time longer than the 31-day delay in *Smith.* As the Second Circuit noted, "[i]n some circumstances eleven days might well constitute an unreasonable delay." *United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998). *See also United States v. Pratt,* 915 F.3d 266, 273 (4th Cir. 2019) (holding that 31-day delay in obtaining warrant to search cellphone was unreasonable); *United States v. Mitchell*, 565 F.3d 1347, 1353 (11th Cir. 2009) (holding 21-day delay in obtaining a warrant to search computer hard drive was unreasonable).

As to the second factor, the property seized—a cellphone—is very important to Mr. Smothers. A cellphone is analogous to the seized property in *Smith*, a tablet computer. The Second Circuit observed:

> the sheer volume of data that may be stored on an electronic device … raises a significant likelihood that much of the data on the device that has been seized will be deeply personal and have nothing to do with the investigation of criminal activity.

7

*Smith*, 967 F.3d at 207. Thus, the Second Circuit has recognized that "special concerns … apply when law enforcement seize and search people's personal electronic data and communication devices." *Id.* As noted in *Smith*, the enormous amount of private, personal data on smartphones, like Mr. Smothers', has led the Supreme Court to accord them broader constitutional protection in comparison to "ordinary personal effects." *Id.* (citing *Riley*, 573 U.S. 373). "[T]he search and seizure of personal electronic devices like a modern cell phone … implicates different privacy and possessory concerns than the search and seizure of a person's ordinary personal effects." *Smith*, 967 F.3d at 208. According to the Second Circuit, this distinction is "vital to assessing the importance of the seized property to a defendant when the item in question is a … personal electronic device." *Id.* Like most people, Mr. Smothers had a great deal of private information on his cellphone, such as internet searches, private communications with family members, photographs of his children, financial records, and the like. Therefore, the second factor also weighs in favor of unreasonableness of the lengthy delay in obtaining a warrant.

As to the third factor, Mr. Smothers' property interest in his cellphone was undiminished. He did not consent to its seizure or to the search of its contents. As in *Smith*, Mr. Smothers "did nothing to reduce his property interest by means of consent or voluntarily relinquishing control" of his cellphone. *Id.* The government argued in its search warrant application that Mr. Smothers' possessory interest was vitiated by his incarceration. (*See* Taylor Decl., Ex. D at 4 n.2). While it is true that Mr. Smothers is not permitted to possess his cellphone at the MDC, it remained his property, and he retained the right to commit it to the care of a family member. The government also claims that the cellphone had independent investigative value, to the extent it carried an IMEI number. This argument is spurious, as the government could have recorded the number in a photograph if it had evidentiary value.

8

As to the fourth factor, there is no justification for the government's delay. According to the search warrant application, the government continued its investigation after the cellphone's seizure. However, the government managed to obtain a warrant to search the Samsung cellphone allegedly seized from Mr. Smothers months before his arrest. Moreover, every allegation recited in the October 2, 2020 warrant application also appears in the government's August 24, 2020 opposition to Mr. Smothers' motion for bail, and the underlying information was likely in the government's possession weeks earlier. Accordingly, at least 39 days elapsed between the government's obtaining any additional information supporting probable cause and its application for a warrant. There is no justification for this delay.

In sum, the *Smith* factors weigh heavily in favor of the government's 101-day being a violation of the Fourth Amendment. The exclusionary rule should apply to the fruits of this unreasonable seizure because the government was on notice from *Smith* that an unreasonable delay in obtaining a warrant for a legally seized communication device is a violation of the Fourth Amendment. *See Smith*, 967 F.3d at 211 (exclusionary rule applies where government violated the Constitution "deliberately, recklessly, or with gross negligence").

**II.     The Court Should Sever Mr. Smothers' Trial from His Co-Defendants' To Prevent Spillover Prejudice**

Mr. Smothers is charged in only two of the twenty counts in the Indictment. Notably, he is not charged with participating in any of the violent crimes which his co-defendants are accused of committing, including the alleged murder of Michael Tenorio. Thus, it is anticipated that the bulk of the trial will concern violent crimes, including a murder, allegedly involving Mr. Smothers' co-defendants, but not Mr. Smothers. While the government will seek to introduce against Mr. Smothers evidence relating to a 2011 shooting, there is no charge in this case relating

9

to that shooting.[1] Furthermore, Mr. Smothers has never been convicted of a violent crime. Under these circumstances, there is a very real danger that spillover prejudice will prevent the jury from fairly assessing Mr. Smother's guilt or innocence.

Federal Rule of Criminal Procedure 14(a) allows a court to "order separate trials of counts, sever the defendants' trials, or provide any other relief that justice so requires" if "the joinder of offenses or defendants in an indictment […] or consolidation for trial appears to prejudice a defendant or the government." Here, a joint trial presents "a serious risk … [of] compromise[ing] a specific trial right of" Mr. Smothers or of "prevent[ing] a jury from making a reliable judgment about guilt or innocence" of Mr. Smothers. *Zafiro v. United States*, 506 U.S. 534, 539 (1993). The Supreme Court has recognized that in a complex trial prejudice can result from evidence relating to one defendant rubbing off on another:

> [E]vidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened.

*Id.* at 539. When a trial involves a great disparity in the weight of evidence relating to one defendant versus another, the "severance is required to prevent unacceptable spillover prejudice." *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003).

In a joint trial, the jury would be left with the difficult task of assessing Mr. Smothers' guilt in light of a large amount of evidence that has nothing to do with him. Evidence concerning the alleged murder of Michael Tenorio is particular will have a significant impact on the jury. There is a risk that the jury will be influenced by this evidence to convict Mr. Smothers based on

---

[1] The "evidence" produced in discovery relating to the alleged 2011 shooting consists solely of a plea to attempted weapon possession.

10

his association with his co-defendants instead of fairly assessing the evidence specific to Mr.

Smothers. Accordingly, severing Mr. Smothers' trial from that of his co-defendants is the only

way to ensure that the jury can make a reliable judgment about Mr. Smothers' guilt or innocence.

### III. A Bill of Particulars is Required to Enable Mr. Smothers to Adequately Prepare a Defense for Trial and to Avoid Double Jeopardy

Mr. Smothers is entitled to a bill of particulars to prevent unfair surprise at trial and to avoid double jeopardy. The purpose of a bill of particulars is to enable the defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling [the] defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir.1987) (citations omitted) (per curiam). Furthermore, "a bill of particulars or other adequate disclosure is appropriate where a conspiracy count covers a complex series of events over a number of years, but provides only the bare bones of the charge." *United States v. Barnes*, 158 F.3d 662, 666 (2d Cir. 1998). Where the government has charged a RICO conspiracy, the government has a greater "obligation to particularize the nature of the charge" than "in the prosecution of crimes of more limited scope." *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988).

Here, Count One charges Mr. Smothers with conspiring to promote the affairs of an enterprise through a pattern of racketeering activity during a fourteen-year period between 2006 and 2019. The Indictment paints with broad brush strokes the alleged pattern of racketeering activity: "multiple acts" in violation of several statutes, including 21 U.S.C. § 841 (drug trafficking); New York State Penal Law Sections 125.25, 110.00, 105.15 and 20.00 (second degree murder, attempt, conspiracy and accessorial conduct); 18 U.S.C. § 1028 (identification document fraud); and 18 U.S.C. § 1029 (access device fraud). Notably, Mr. Smothers is not

charged with any of the crimes alleged in Counts Three through Twenty of the Indictment. Therefore, those charges shed no light on when, where and how Mr. Smothers allegedly agreed to participate in the conduct of the affairs of E.A.M. through a pattern of racketeering activity.

Mr. Smothers is charged in Count Two with possessing a firearm during a drug trafficking offense. Again, the alleged timeframe is very broad: the same fourteen-year period between 2006 and 2019. As with Count One, the subsequent Counts of the Indictment shed no light on when, where and how Mr. Smothers committed this offense.

While voluminous, the discovery provides little additional specificity as to Mr. Smothers' alleged offenses. *See United States v. Skelos*, No. 15 CR 317 (KMW), 2015 WL 6159326, at *13 (S.D.N.Y. Oct. 20, 2015). ("Voluminous production, on its own, is not enough to preclude the need for a bill of particulars in all circumstances."). The apparent reason is that the government's case against Mr. Smothers will be primarily based on cooperator evidence. The Second Circuit has made clear that providing 3500 material shortly before trial is not an adequate substitute for a straightforward identification in a bill of particulars of the offenses that the prosecution intends to prove. *See Davidoff*, 845 F.2d at 1155.

Accordingly, the government should be required to provide a bill of particulars specifying, at minimum, the date, time and location of the alleged "multiple acts" of identification document fraud, access device fraud, drug trafficking, and murder or attempted murders (to the extent the details of such attempted murders or murders are not set forth in Counts Three through Twenty. Additionally, the government should be required to provide the date, time and location of Mr. Smothers' alleged possession of a firearm between 2006 and 2019.

Finally, the government should be required to identify non-cooperating unindicted co-conspirators. This information is necessary to prevent surprise at trial as well as to ensure that Mr. Smothers avoids double jeopardy.

### IV.     Mr. Smothers Joins in Qawon Allen's Motion to Dismiss the Indictment

For the reasons set forth in Qawon Allen's moving papers, the Indictment in this case should be dismissed on the grounds that the grand jury procedures in this case violated Section 1867(a) of Title 28 of the United States Code.

### CONCLUSION

For all the foregoing reasons, Mr. Smothers respectfully requests that the Court (1) suppress all evidence obtained from the iPhone seized on the day of his arrest under the Fourth Amendment, (2) sever Mr. Smothers' trial from that of his co-defendants, (3) direct the government to provide a bill of particulars, (4) dismiss the Indictment under Title 28 of the United States Code; (5) permit Mr. Smothers to join in his co-defendants' pretrial motions; and (6) grant any additional relief that to the Court seems appropriate .

Date:   June 18, 2021                                           /s/_____
        New York, New York                               Zachary S. Taylor (ZT 7545)
                                                        TAYLOR & COHEN LLP
                                                        305 Broadway, 7th Floor
                                                        New York, New York 10007
                                                        Tel:   (212) 257-1902
                                                        Fax:   (646) 808-0966
                                                        Email: ztaylor@taylorcohenllp.com

                                                        *Attorney for Quandel Smothers*